MARTIN J. BRILL (SBN 53220)
TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: mjb@lnbrb.com, tma@lnbrb.com

FILED
JUL - 1 2009
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:           Deputy Clerk

Proposed Attorneys for Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>CATHERINE P. MACADAM and<br>DONAL J. MACADAM,<br><br>Debtors. | Case No. 1:09-bk-17476-MT<br><br>Chapter 11<br><br>**DEBTORS' NOTICE OF MOTION AND MOTION FOR JOINT ADMINISTRATION OF CASES; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF CATHERINE P. MACADAM IN SUPPORT THEREOF**<br><br>[No Hearing Required Unless Requested Pursuant to Local Bankruptcy Rule 9013-1(o)] |

**PLEASE TAKE NOTICE** that Agua Dulce Vineyards, LLC ("ADV"), a California limited liability company and the debtor and debtor in possession in Case No. 1:09-bk-15207-MT, and Catherine P. MacAdam and Donal J. MacAdam (the "MacAdams" and together with ADV, the "Debtors"), the debtors and debtors in possession in Case No. 1:09-bk-17476-MT, hereby move the court, by way of this notice of motion (the "Notice") and motion (the "Motion")

1

for the entry of an order of the Court authorizing and directing the joint administration of the Debtors' pending chapter 11 cases (the "Cases").

As set forth in the further detail in the annexed memorandum of points and authorities (the "Memorandum") and the declaration of Catherine P. MacAdam in support thereof (the "MacAdam Declaration"), good cause for the joint administration of the Debtors' Cases exists because, among other things, (1) nearly all of the MacAdams' debt arises from guaranties of ADV's debt, (2) the MacAdams, who, together with their minor children, own 100% of Sweetwater Vineyards, LLC, which, in turn, owns 100% of ADV, have a vested interest in obtaining a successful outcome in both cases, (3) there will be a number of overlapping issues in the Cases, (4) the interests of judicial economy would be served by jointly administering the cases, (5) joint administration will avoid duplicative expenses, and (6) joint administration will help to ensure that creditors in the Cases will receive appropriate notice of pertinent matters.

**PLEASE TAKE FURTHER NOTICE** that this Motion is based upon 11 U.S.C. § 105(a), Fed. R. Bankr. P. 1015, Local Bankruptcy Rules 1015-1 and 9013-1(o), this Notice of Motion and Motion, the Memorandum, the MacAdam Declaration, the entire record of the Cases, the statements, arguments and representations of counsel to be made at the hearing on the Motion, if any, and any other evidence properly presented to the Court at or prior to any hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that Local Bankruptcy Rule 9013-1(o)(1) requires that any response and request for hearing on this Motion must be filed with the Court and served on the Office of the United States Trustee and Debtors' counsel, whose name and address is set forth in the upper, left-hand corner of this Notice, within 15 days after the service of this Notice. The failure to timely respond to this Motion may be deemed to be consent to the relief requested in this Motion.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order:

(a) affirming the adequacy of the notice given;

(b) granting the Motion in its entirety;

(c) authorizing the joint administration of the Cases;

(d) approving the form of caption suggested by the Debtors herein; and

(e) granting such other and further relief as the Court deems just and proper under the circumstances of the Cases.

Dated: June 29, 2009

AGUA DULCE VINEYARDS, LLC,
a California limited liability company

CATHERINE P. MACADAM and
DONAL J. MACADAM

By: /s/ Todd M. Arnold
    MARTIN J. BRILL
    TODD M. ARNOLD
    LEVENE, NEALE, BENDER, RANKIN
      & BRILL L.L.P.
    Attorneys for Agua Dulce Vineyards, LLC
    Proposed Attorneys for Catherine P.
    MacAdam and Donal J. Macadam

# MEMORANDUM OF POINTS AND AUTHORITIES[1]

## I.

## STATEMENT OF FACTS

**A.    The Debtors And The Filing Of The Debtors' Chapter 11 Bankruptcy Cases.**

1.    On May 4, 2009, ADV filed a voluntary petition under Chapter 11 of 11 U.S.C. § 101 et seq. (as amended, the "Bankruptcy Code"). ADV is operating its business and managing its financial affairs and operating its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.    On June 17, 2009, the MacAdams filed a voluntary petition under Chapter 11 the Bankruptcy Code. The MacAdams are operating their business, managing their financial affairs, and operating their bankruptcy estate as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.    The MacAdams, together with their 4 minor children, own 100% of the equity of Sweetwater Vineyards, LLC (60% by the MacAdams, and 10% by each of their 4 minor children), which, in turn, owns 100% of the equity of ADV.

4.    ADV is the operator of a 90 acre, fully operational vineyard and winery, featuring daily wine tasting and tours, and a gourmet gift shop. ADV is located 45 minutes north of downtown Los Angeles and has earned the honor of being Los Angeles County's leading fine wine grower and producer. ADV has received recognition for its hand-crafted approach to wine making, and ADV's wines have won over 70 medals in several national wine competitions. ADV sells its wine varieties, which range in price from $15 - $139 per bottle, to customers at its vineyard

---

[1] All capitalized terms herein have the same meanings as in the proceeding Notice and Motion.

and winery, through ADV's website www.aguadulcevineyards.com, through ADV's Wine Club, which currently boasts approximately 4,000 members, and through bulk wine sales.

5. In 1999, the MacAdams, along with their partner, Ray Watt, through his various entities and affiliates including Narcissa Estates, Inc. ("Narcissa"), founded ADV when they discovered that the forty acre property that they originally acquired for real estate development had ideal soil and climate conditions for growing world-class grapes. This property, which is located at 9640 and 9830 Sierra Highway, Agua Dulce, California 91390, houses ADV's winery, a residence occupied by the MacAdams and their 4 minor children, and planted vineyards (the "Winery Property"). Although the planting of the vineyards on the Winery Property began in 1999, ADV was not formally established until January 2001.

6. Since ADV's first release in 2001, ADV has focused on producing award-winning fine wines with amazing complexity, bouquet and flavor that reflect the hands-on dedication that goes into every bottle. The MacAdams are deeply involved with the day-to-day workings of the vineyard and winery, as well as being fully committed to ensuring that every visitor to ADV and its tasting room has the best experience possible.

7. In December 2005, the MacAdams bought out Ray Watt's interest in ADV (which at that point was held entirely through Narcissa) for approximately $6.5 million. The MacAdams' buyout of Mr. Watt's interest was financed in part through a hard money loan from KSI Capital Corporation ("KSI") for approximately $5.6 million (the "KSI Loan"), and in part through a promissory note in favor of Narcissa in the sum of $992,290, which was subsequently increased to $1,356,000, secured by a deed of trust against the Winery Property.

8. Following the buyout of Ray Watt's interest in ADV in December 2005, ADV leased a fifty three acre parcel of vacant land adjoining the Winery Property located at 10124 Sierra Highway, Agua Dulce, California 91390 (the "Vineyard Property") from Narcissa to expand

ADV's planted vineyards. ADV acquired the Vineyard Property from Narcissa in October 2007. ADV's acquisition of the Vineyard Property was financed in part through a loan from Western Commercial Bank (the "Bank") in the principal amount of $1 million (the "$1M Loan"), which loan was secured by a first priority deed of trust against the Vineyard Property, and in part through a promissory note in favor of Narcissa in the sum of $3,100,000, secured by a second priority deed of trust against the Vineyard Property.

9. In 2007, ADV entered into a series of loan agreements with the Bank, including the $1M Loan, pursuant to which the Bank provided financing to ADV in the total principal sum of $8.1 million and obtained a security interest in substantially all of ADV's assets, including the Winery Property and the Vineyard Property. One of the goals of these loans was to retire the KSI Loan. Since the Bank did not provide enough funding to completely retire the KSI Loan, the MacAdams executed a new note in the amount of $400,000 in favor of KSI (the "New KSI Loan").

**B.    Events Leading To The Filing Of The Debtors' Chapter 11 Bankruptcy Cases.**

10. Although ADV's business experienced robust and steady growth, at a rate of 10% each year from 2001 to 2007, the partner buyout and the purchase of the Vineyard Property increased ADV's debt load, creating cash flow issues when ADV's revenue was not sufficient to service all of ADV's debts.

11. In an effort to increase its revenue, ADV attempted to expand its existing in-home wine parties division, called "Agua Dulce Wine Adventures," which eventually partnered up with Suzanne Somers' direct selling company. This partnership was then picked up by a company called Youngevity, which had at the time over 300,000 consultants worldwide (primarily in the United States and Asia). Although ADV hoped that its in-home wine parties division would benefit from the Youngevity network, it ultimately did not result in the increase in sales and revenue that ADV had expected.

12. In 2008, in an effort to increase revenue and reduce its large inventory of wine, ADV began selling its wine in "bulk" to third-party distributors. Wine sold in "bulk" is often repackaged and sold under different labels, and is a relatively common practice within the wine industry.

13. Although ADV began increasing its revenues by, among other things, selling its wine in bulk, ADV suffered a huge setback in 2008 when a large number of its Wine Club members were repeatedly invoiced in error by ADV's credit card processing system. In the normal course of business, ADV's Wine Club members receive six bottles of wine every three months and ADV's credit card processing system automatically debits the payment for the wine from the members' credit cards on file. In early 2008, ADV's credit card processing software was upgraded, causing a glitch that resulted in repeated debiting from the Wine Club members' credit cards. In an effort to salvage its relationships with the Wine Club members, ADV paid refunds directly to many of the members. In the meantime, members who had also contacted their credit card companies obtained refunds directly from their credit card companies, who then turned around and debited the refund amounts from ADV's bank accounts. This resulted in a double hit to ADV's bank accounts, leaving ADV's accounts overdrawn approximately $287,000 by the end of the summer.

14. As a result of the credit card processing fiasco, ADV faced a cash flow crisis, causing ADV to fall behind on its accounts payable and prompting ADV to seek an additional loan from the Bank. In November 2008, after contracting with a new credit card processing company (at the request of the Bank), ADV obtained a loan from the Bank in the principal amount of $750,000 (the "$750K Loan"). ADV's obligations to the Bank under the $750K Loan are secured by a security interest in off-site and on-site bottled wines, in-tank or in-barrel. The documents underlying the $750K Loan allowed the Bank to create a reserve (the "Reserve Funds") from 30%

of the Debtor's credit card deposits up to $100,000 to cover chargebacks from the credit card processor. This caused a severe cash flow crunch for the Debtor. On March 4, 2009, the Bank filed and recorded a Notice of Default against ADV to initiate a foreclosure proceeding against the Vineyard Property.

15. As a result of all of the foregoing, ADV was forced to seek protection under Chapter 11 of the Bankruptcy Code in order to gain control over its cash (including the Reserve Funds) and operations, to have the opportunity to implement business strategies targeted at increasing revenue – including working with wine brokers and national distributors to increase sales of its wine, at both the bulk sales level and direct sales level, to restructure its existing debt and emerge a stronger and profitable company.

16. The MacAdams personally guarantied ADV's obligations to the Bank. The MacAdams also personally guarantied a number of other ADV business debts. Additionally, the MacAdams are liable on the New KSI Loan.

17. As a result of ADV's financial difficulties and inability to remain current on its debt obligations, including those for the payment of the MacAdams' salaries, (a) a number of ADV creditors have made demands and initiated litigation against the MacAdams based on their guaranty obligations, and (b) the MacAdams have been unable to remain current on the New KSI Loan. Based on the foregoing events, among others, the MacAdams were forced to seek protection under chapter 11 of the Bankruptcy Code in order to gain control over their assets, to continue to work towards reorganization in the ADV bankruptcy case, and to restructure their existing debts.

18. On June 15, 2009, the Court entered an order approving ADV's application to employ Levene, Neale, Bender, Rankin & Brill L.L.P. ("LNBRB") as ADV's bankruptcy counsel. On June 29, 2009, the MacAdams filed an application to employ LNBRB as their bankruptcy counsel.

## II.

## DISCUSSION

The Debtors request that the Court approve joint administration of their estates. Rule 1015 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides that the Court may order the joint administration of cases involving a debtor and an affiliate[2] where such an order "may tend to avoid unnecessary costs and delay." Fed. R. Bankr. P. 1015(b)(4) & (c). Bankruptcy Rule 1015 is designed to promote the fair and efficient administration of related cases of affiliated debtors, while ensuring that no rights of individual creditors are unduly prejudiced. See 8 Collier on Bankruptcy ¶ 1015.03 (15th Ed. 1990); In re Brookhollow Assocs., 435 F.Supp. 763, 766 (D. Mass. 1977), aff'd, 575 F.2d 1003 (1st Cir. 1986) (joint administration "help[s] the bankruptcy court to administer economically and efficiently different estates with substantial interests in common"); In re H&S Transportation Co., 55 B.R. 786 (Bankr. M.D. Tenn. 1985).

Unlike substantive consolidation which pools the assets and liabilities of related entities, joint administration is merely procedural; each of the Debtors' estates herein would remain a separate legal entity and creditors' individual rights against each estate are preserved. In re N.S. Garrott & Sons, 63 B.R. 189, 191 (E.D. Ark. 1986); In re Arnold, 33 B.R. 765, 767 (Bankr. E.D.N.Y. 1983).

Joint administration of the Cases is warranted and appropriate under Bankruptcy Rule 1015(b). As set forth above, (1) nearly all of the MacAdams' debt arises from guaranties of ADV's debt, (2) the MacAdams have a vested interest in obtaining a successful outcome in both

---

[2] Under the definition of "affiliate" in the Bankruptcy Code, the Debtors are "affiliates." See 11 U.S.C. § 101(2)(A) and (B).

9

cases, (3) there will be a number of overlapping issues in the Cases, (4) the interests of judicial economy would be served by jointly administering the cases, (5) joint administration will avoid duplicative expenses, and (6) joint administration will help to ensure that creditors in the Cases will receive appropriate notice of pertinent matters.

Therefore, the affairs of the Debtors are sufficiently intertwined to make joint administration of the Cases more efficient and economical than separate administration. Joint administration will greatly reduce the costs in administering these Cases and would serve to eliminate any potential confusion and waste associated with maintaining separate dockets. Moreover, joint administration would eliminate the need for filing duplicative pleadings in each of the Cases and would reduce the burden for the Clerk's Office in administering the Cases.

Further, the Debtors believe that there would be no material prejudice to any creditor if the Cases are jointly administered. Indeed, creditors of the Debtors' estates will benefit from the reduction of administrative costs and fees. Moreover, to the extent any conflict between the estates herein arises, the Court may take further steps to modify its order of joint administration or the orders employing LNBRB to eliminate any such conflict. In light of the foregoing, the Court should exercise its discretion under Bankruptcy Rule 1015(b) and order joint administration of the Cases.

In the event the Court orders joint administration of the Cases, the Debtors respectfully suggest that the ADV case be used as the lead case, as it has a lower case number, and that the following caption be approved:

///

///

///

///

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re<br><br>AGUA DULCE VINEYARDS, LLC, a California limited liability company,<br><br>Debtor.<br><br>In re<br><br>CATHERINE P. MACADAM and DONAL J. MACADAM,<br><br>Debtors.<br><br>☐ Affects All Debtors<br><br>☐ Affects Agua Dulce Vineyards, LLC only<br><br>☐ Affects Catherine P. MacAdam and Donal J. MacAdam only | Lead Case No. 1:09-bk-15207-MT<br>(Jointly Administered with Catherine P. MacAdam and Donal J. MacAdam – Case No. 1:09-bk-17476-MT)<br><br>Chapter 11 Cases<br><br><br><br>**Hearing:**<br>Date: _____, 2009<br>Time: ___:___ _.m.<br>Ctrm: Courtroom "303"<br>21041 Burbank Blvd.<br>Woodland Hills, CA 9136 |

## III.

## CONCLUSION

Based on the foregoing, the Debtors submit that approval by this Court of the Motion is in the best interests of the Debtors' estates and respectfully request that the Court enter an order:

(a)  affirming the adequacy of the notice given;

(b)  granting the Motion in its entirety;

(c)  authorizing the joint administration of the Cases;

(d)  approving the form of caption suggested by the Debtors herein; and

(e) granting such other and further relief as the Court deems just and proper under the circumstances of the Cases.

Dated: June 29, 2009

> AGUA DULCE VINEYARDS, LLC,
> a California limited liability company
>
> CATHERINE P. MACADAM and
> DONAL J. MACADAM
>
> By: /s/ Todd M. Arnold
> MARTIN J. BRILL
> TODD M. ARNOLD
> LEVENE, NEALE, BENDER, RANKIN
> & BRILL L.L.P.
> Attorneys for Agua Dulce Vineyards, LLC
> Proposed Attorneys for Catherine P.
> MacAdam and Donal J. Macadam

# DECLARATION OF CATHERINE P. MACADAM

I, CATHERINE P. MACADAM, hereby declare as follows:

1. I have personal knowledge of the facts set forth below and, if called to testify, I would and could competently testify thereto.

2. I make this Declaration in support of the Motion and Memorandum to which this Declaration is attached. Unless otherwise stated, all capitalized terms herein have the same meanings as in the Motion and Memorandum.

3. I am the Manager of Sweetwater Vineyards, LLC, which is the Manager of ADV. On May 4, 2009, ADV filed a voluntary petition under Chapter 11 of Bankruptcy Code. ADV is operating its business and managing its financial affairs and operating its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4. On June 17, 2009, my husband and I filed a voluntary petition under Chapter 11 the Bankruptcy Code. We are operating our business, managing our financial affairs, and operating our bankruptcy estate as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5. My husband and I, together with our 4 minor children, own 100% of the equity of Sweetwater Vineyards, LLC (60% by my husband and I, and 10% by each of our 4 minor children), which, in turn, owns 100% of the equity of ADV.

6. ADV is the operator of a 90 acre, fully operational vineyard and winery, featuring daily wine tasting and tours, and a gourmet gift shop. ADV is located 45 minutes north of downtown Los Angeles and has earned the honor of being Los Angeles County's leading fine wine grower and producer. ADV has received recognition for its hand-crafted approach to wine making, and ADV's wines have won over 70 medals in several national wine competitions. ADV sells its wine varieties, which range in price from $15 - $139 per bottle, to customers at its

vineyard and winery, through ADV's website www.aguadulcevineyards.com, through ADV's Wine Club, which currently boasts approximately 4,000 members, and through bulk wine sales.

7. In 1999, the my husband and I, along with our partner, Ray Watt, through his various entities and affiliates including Narcissa Estates, Inc. ("Narcissa"), founded ADV when we discovered that the forty acre property that we originally acquired for real estate development had ideal soil and climate conditions for growing world-class grapes. This property, which is located at 9640 and 9830 Sierra Highway, Agua Dulce, California 91390, houses ADV's winery, a residence occupied by my husband and I and our 4 minor children, and planted vineyards (the "Winery Property"). Although the planting of the vineyards on the Winery Property began in 1999, ADV was not formally established until January 2001.

8. Since ADV's first release in 2001, ADV has focused on producing award-winning fine wines with amazing complexity, bouquet and flavor that reflect the hands-on dedication that goes into every bottle. My husband and I are deeply involved with the day-to-day workings of the vineyard and winery, as well as being fully committed to ensuring that every visitor to ADV and its tasting room has the best experience possible.

9. In December 2005, my husband and I bought out Ray Watt's interest in ADV (which at that point was held entirely through Narcissa) for approximately $6.5 million. Our buyout of Mr. Watt's interest was financed in part through a hard money loan from KSI Capital Corporation ("KSI") for approximately $5.6 million (the "KSI Loan"), and in part through a promissory note in favor of Narcissa in the sum of $992,290, which was subsequently increased to $1,356,000, secured by a deed of trust against the Winery Property.

10. Following the buyout of Ray Watt's interest in ADV in December 2005, ADV leased a fifty three acre parcel of vacant land adjoining the Winery Property located at 10124 Sierra Highway, Agua Dulce, California 91390 (the "Vineyard Property") from Narcissa to

expand ADV's planted vineyards. ADV acquired the Vineyard Property from Narcissa in October 2007. ADV's acquisition of the Vineyard Property was financed in part through a loan from Western Commercial Bank (the "Bank") in the principal amount of $1 million (the "$1M Loan"), which loan was secured by a first priority deed of trust against the Vineyard Property, and in part through a promissory note in favor of Narcissa in the sum of $3,100,000, secured by a second priority deed of trust against the Vineyard Property.

11. In 2007, ADV entered into a series of loan agreements with the Bank, including the $1M Loan, pursuant to which the Bank provided financing to ADV in the total principal sum of $8.1 million and obtained a security interest in substantially all of ADV's assets, including the Winery Property and the Vineyard Property. One of the goals of these loans was to retire the KSI Loan. Since the Bank did not provide enough funding to completely retire the KSI Loan, my husband and I executed a new note in the amount of $400,000 in favor of KSI (the "New KSI Loan").

12. Although ADV's business experienced robust and steady growth, at a rate of 10% each year from 2001 to 2007, the partner buyout and the purchase of the Vineyard Property increased ADV's debt load, creating cash flow issues when ADV's revenue was not sufficient to service all of ADV's debts.

13. In an effort to increase its revenue, ADV attempted to expand its existing in-home wine parties division, called "Agua Dulce Wine Adventures," which eventually partnered up with Suzanne Somers' direct selling company. This partnership was then picked up by a company called Youngevity, which had at the time over 300,000 consultants worldwide (primarily in the United States and Asia). Although ADV hoped that its in-home wine parties division would benefit from the Youngevity network, it ultimately did not result in the increase in sales and revenue that ADV had expected.

14.     In 2008, in an effort to increase revenue and reduce its large inventory of wine, ADV began selling its wine in "bulk" to third-party distributors. Wine sold in "bulk" is often repackaged and sold under different labels, and is a relatively common practice within the wine industry.

15.     Although ADV began increasing its revenues by, among other things, selling its wine in bulk, ADV suffered a huge setback in 2008 when a large number of its Wine Club members were repeatedly invoiced in error by ADV's credit card processing system. In the normal course of business, ADV's Wine Club members receive six bottles of wine every three months and ADV's credit card processing system automatically debits the payment for the wine from the members' credit cards on file. In early 2008, ADV's credit card processing software was upgraded, causing a glitch that resulted in repeated debiting from the Wine Club members' credit cards. In an effort to salvage its relationships with the Wine Club members, ADV paid refunds directly to many of the members. In the meantime, members who had also contacted their credit card companies obtained refunds directly from their credit card companies, who then turned around and debited the refund amounts from ADV's bank accounts. This resulted in a double hit to ADV's bank accounts, leaving ADV's accounts overdrawn approximately $287,000 by the end of the summer.

16.     As a result of the credit card processing fiasco, ADV faced a cash flow crisis, causing ADV to fall behind on its accounts payable and prompting ADV to seek an additional loan from the Bank. In November 2008, after contracting with a new credit card processing company (at the request of the Bank), ADV obtained a loan from the Bank in the principal amount of $750,000 (the "$750K Loan"). ADV's obligations to the Bank under the $750K Loan are secured by a security interest in off-site and on-site bottled wines, in-tank or in-barrel. The documents underlying the $750K Loan allowed the Bank to create a reserve (the "Reserve

Funds") from 30% of the Debtor's credit card deposits up to $100,000 to cover chargebacks from the credit card processor. This caused a severe cash flow crunch for the Debtor. On March 4, 2009, the Bank filed and recorded a Notice of Default against ADV to initiate a foreclosure proceeding against the Vineyard Property.

17. As a result of all of the foregoing, ADV was forced to seek protection under Chapter 11 of the Bankruptcy Code in order to gain control over its cash (including the Reserve Funds) and operations, to have the opportunity to implement business strategies targeted at increasing revenue – including working with wine brokers and national distributors to increase sales of its wine, at both the bulk sales level and direct sales level, to restructure its existing debt and emerge a stronger and profitable company.

18. My husband and I personally guarantied ADV's obligations to the Bank. We also personally guarantied a number of other ADV business debts. Additionally, we are liable on the New KSI Loan.

19. As a result of ADV's financial difficulties and inability to remain current on its debt obligations, including those for the payment of salaries for me and my husband, (a) a number of ADV creditors have made demands and initiated litigation against my husband and I based on our guaranty obligations, and (b) my husband and I have been unable to remain current on the New KSI Loan. Based on the foregoing events, among others, my husband and I were forced to seek protection under chapter 11 of the Bankruptcy Code in order to gain control over our assets, to continue to work towards reorganization in the ADV bankruptcy case, and to restructure our existing debts.

20. On June 15, 2009, the Court entered an order approving ADV's application to employ LNBRB as ADV's bankruptcy counsel. On June 29, 2009, my husband and I filed an application to employ LNBRB as our bankruptcy counsel.

21. I believe that joint administration of the Cases is warranted and appropriate, because (1) nearly all of me and my husband's debt arises from guaranties of ADV's debt, (2) my husband and I have a vested interest in obtaining a successful outcome in both Cases, (3) there will be a number of overlapping issues in the Cases, (4) the interests of judicial economy would be served by jointly administering the cases, (5) joint administration will avoid duplicative expenses, and (6) joint administration will help to ensure that creditors in the Cases will receive appropriate notice of pertinent matters.

22. Therefore, I believe that the affairs of the Debtors are sufficiently intertwined to make joint administration of the Cases more efficient and economical than separate administration. I also believe that joint administration will greatly reduce the costs in administering these Cases and would serve to eliminate any potential confusion and waste associated with maintaining separate dockets. Moreover, joint administration should eliminate the need for filing duplicative pleadings in each of the Cases and would reduce the burden for the Clerk's Office in administering the Cases.

23. Further, I believe that that there would be no material prejudice to any creditor if the Cases are jointly administered. Indeed, creditors of the Debtors' estates will benefit from the reduction of administrative costs and fees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30th day of June 2009, at Agua Dulce, California.

_____
CATHERINE P. MACADAM

| In re: | Chapter 11 |
|---|---|
| CATHERINE P. MACADAM and DONAL J. MACADAM, | 1:09-bk-17476-MT |
| Debtor(s). | |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067.

A true and correct copy of the foregoing document described as **DEBTORS' NOTICE OF MOTION AND MOTION FOR JOINT ADMINISTRATION OF CASES; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF CATHERINE P. MACADAM IN SUPPORT THEREOF** will be served on the Judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 29, 2009** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Martin J Brill   mjb@lnbrb.com
- Katherine Bunker   kate.bunker@usdoj.gov
- United States Trustee (SV)   ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On July 1, 2009, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Attached Service List Served by U.S. Mail**

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 1, 2009** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

The Hon. Maureen Tighe **By Personal Attorney Service!**
United States Bankruptcy Court
21041 Burbank Boulevard
Woodland Hills, CA 91367

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 1, 2009 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9013-3.1

Catherine P. MacAdam
Donal J. MacAdam
RSN
20 Largest
SERVICE BY U.S. MAIL

Catherine P. MacAdam
Donal J. MacAdam
9640 Sierra Highway
Agua Dulce, CA 91390

Katherine Bunker
Office of the U.S. Trustee
21051 Warner Center Lane Ste 115
Woodland Hills, CA 91367

Western Commercial Bank
21550 Oxnard St.
Ste 100
Woodland Hills, CA 91367

KSI Financial
Henry Haskell
17 Arcadian Dr., # 106
Paramus, NJ 07652

Merchant E Solutions, Inc
3400 Bridge Parkway
Redwood City, CA 94065

Encore Glass
4345 Industrial Way
Benicia, CA 94510

Assoc. Winery Systems, Inc.
Prospero Equipment Corp.
9505 Rd. 30 1/2
Madera, CA 93638

Newmark Communications, Inc.
400 S Victory Blvd # 300
Burbank, CA 91502

Trust International Corp.
501 S Flagler Dr. # 300
West Palm Beach, FL 33401

Axis Capital/Leaf Funding
2005 Market St. 14th Fl.
Philadelphia, PA 19103

Leaf financial/Axis Capital
2005 Market St 14th Floor
Philedeplphia, PA 19103

William Lively & Assoc
23929 Valencia Blvd. #411
Santa Clarita, CA 91355

AV Party Rentals
23800 San Fernando Road
Newhall, CA 91321

Robert Rothchild Farms
3143 East US Highway 36
PO Box 767
Urbana, OH 43078

Capital One
1680 Capital One Drive
Mc Lean, VA 22102

Southern Cal. Mat. Handling, Inc.
8314 E Slauson Ave
Pico Rivera, CA 90660

Bank of America
101 N. Tyron
Charlotte, NC 28255

Dr. Olga Popel M.D.
5620 Wilbur Ave #322
Trazanna, CA 91356

Applied Bank
P.O. Box 17120
Wilmington, DE 19886-7120

Lexus Financial Services
P.O. Box 22202
Owings Mills, MD 21117

HSBC Cardservices
P.O. Box 60136
City of Industry, CA 91716-0136

Reassure America Life Ins. Co.
Attn: legal Dept.
1700 Magnovox Way
Fort Wayne, IN 46804